Elias Cary, in trust for the widow and heirs of Abel Cary, Deceased, for use of Delilah Estella Cary Ullom, Appellant, daughter and devisee of Emma Cary, Deceased, *v.* Stephen Cary, James L. Iams, Otho Iams, William W. Dunn, John Smith and Franklin P. Iams and J. W. Closser, surviving assignee of Stephen Cary, terre-tenants.

*Evidence—Written instrument—Explanation of written instrument—Mortgage—Record—Satisfaction of mortgage.*

A party offering a paper in evidence must offer the whole of it just as it is, and if it requires explanation the burden is upon him to explain This rule applies to the record of a mortgage on the margin of which the recorder has copied a receipt or satisfaction not acknowledged.

*Mortgage—Consideration—Satisfaction.*

The real estate of a decedent leaving a widow and four heirs was divided by partition proceedings into four purparts. One of the heirs purchased one of them at the sale, and another of the heirs purchased the remaining three, giving mortgages therefor. Subsequently he conveyed two of the purparts to the other two heirs so that finally the four purparts vested respectively in the four heirs. No money passed in any of the transactions, and it was not intended that any should. The mortgage

upon the part which the purchaser of the three parts retained was to be treated as paid and canceled, but it was never properly and legally satisfied of record. The purpose of naming prices in money in the partition proceedings and in the mortgages was apparently to liquidate the widow's interest which was to continue as a fixed charge on the land during her life, and to be distributable on her death to the heirs. No fraud was shown in the transaction. *Held,* that the mortgage on the part retained by the purchaser of the three purparts should not be enforced.

Argued Oct. 21, 1898. Appeal, No. 191, Oct. T., 1898, by Delilah Estella Cary Ullom, from order of C. P. Greene Co., Oct. T., 1892, No. 103, refusing to take off nonsuit. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before TAYLOR, P. J., of the 27th judicial district, specially presiding.

At the trial the plaintiff offered in evidence the record of the mortgage showing a receipt on the margin.

Mr. Iams, of counsel for defendant: We think they should read the receipt on the margin.

By the Court: We will consider everything that is on the mortgage in evidence with the mortgage. I think you had better read that satisfaction and then put in your deposition and we will have the record full.

Mr. Downey, of counsel for plaintiff: We take exceptions to being required to read the receipt on the margin of the mortgage. Our objection is, that it is not properly a part of the record. It is a mere copy made by the recorder.

By the Court: We will admit it in evidence as a part of the record, and give you an exception to the reading of it. [1]

And now June 6, 1889, paper filed and recorded as follows:

"In re partition of the real estate of Abel Cary, deceased. { At No. 39, January court, 1876, in the Orphans' Court of Greene County, Pa.

"On behalf of my ward, a minor child of Emma Cary, deceased, I hereby acknowledge to have received from Stephen Cary on September 21, 1877, $4,385.10, four thousand three hundred and eighty-five and 10-100 dollars, in full satisfaction of my said ward's two thirds share of the purchase money to be paid by the purchasers of purparts Nos. 1, 2 and 3, (one,

two and three,) before the death of the widow, leaving her share of the one third to be accounted for at the death of the widow.

"June 6, 1889.              •              Elias Cary.    [Seal.]

" Testamentary guardian of Delilah Estella Cary.    Filed and recorded June 6, 1889.

" W. H. Sutton,<br>
"Recorder."

Other facts appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (3) refusal to take off nonsuit.

*A. A. Purman*, with him *R. F. Downey*, for appellant, cited on the admission of the receipt: Evans v. Jones, 1 Yeates, 172; Powell's App., 98 Pa. 403; Hellman v. Hellman, 4 Rawle, 440; Bispham on Principles of Equity, sec. 270; on the entry of a nonsuit: Smyth v. Craig, 3 W. & S. 14; Miller v. Bealor, 100 Pa. 583; Bevan v. Ins. Co., 9 W. & S. 187; Maynes v. Atwater, 88 Pa. 496; Berg & Co. v. Abbott, 83 Pa. 177; Com. v. Hantz, 2 P. & W. 336; Miller's Est., 1 Pa. 326; Royer's App., 11 Pa. 36; Davis's App., 60 Pa. 118.

*F. P. Iams*, with him *James E. Sayers, J. W. Ray* and *H. B. Axtell*, for appellees, cited Ross v. Cowden, 7 W. & S. 376; Waters's App., 35 Pa. 523; Struthers v. Peltz, 18 Pa. 280; Harner's App., 94 Pa. 489; Reed v. Mellor, 122 Pa. 651; Alvord v. Marsh, 12 Allen, 603.

Opinion by Mr. Justice Mitchell, January 2, 1899:

The first assignment of error is to the ruling of the court that everything on the mortgage should be considered as in evidence with it.    Appellant objected that the entry of satisfaction being a copy by the recorder of a paper not acknowledged was not legally part of the record.

The general rule is that a party offering a paper in evidence must offer the whole of it just as it is, and if it requires explanation the burden is upon him to explain.    In the present case

the offer as printed in the record is of "the mortgage," but it is apparently assumed by both sides in the argument that what was actually offered was the mortgage book from the recorder's office, or an exemplification from it. This under the statute was evidence "as valid and effectual as the original deeds themselves," for which it is a substitute. But it cannot have any greater effect. If the mortgage itself had been given in evidence and showed a satisfaction or a receipt in full, the plaintiff would have been put to explanation to do away with its effect, and there is no sound reason why he should escape that obligation when the receipt appears on the face of the record which he offers in place of the original instrument. In Roberts v. Halstead, 9 Pa. 32, the plaintiff offered an exemplification of the mortgage which showed a satisfaction of record by the mortgagee, but followed it by evidence that the satisfaction was entered after the mortgagee had parted with his interest. So, in Lancaster v. Smith, 67 Pa. 427, the plaintiff offered the record of the mortgage which showed an entry of satisfaction by an attorney in fact, and followed the offer by evidence that the letter under which the attorney had acted was a forgery. In both cases the obligation was recognized of putting in evidence the whole instrument as it appeared on the record, and following it with evidence of such explanation as the case required. In the present case the court committed no error in compelling the plaintiff to follow the same general rule. Whether the recorder's entry of the receipt on the margin of the record was wholly unauthorized and a mere nullity, which gave no protection to the terre-tenants who purchased on the faith of it, was a question which would have arisen later had not the course of the trial rendered it immaterial.

Apart from the technical ground that the mortgage was not legally satisfied, the plaintiff's case rested on the claim that, as no money passed between Elias Cary, the legal plaintiff, and Stephen Cary, the mortgagor, at the time of the settlement, but only a conveyance of land from Stephen to Elias individually, there was a misapplication by the latter of trust funds, which did not constitute a valid payment of the mortgage, either as regards Stephen or the terre-tenants who purchased from his assignees. To sustain this position plaintiff put in evidence the deposition of Stephen Cary, from which the following facts

appeared: Abel Cary, the source of title of all the parties, died in 1875, intestate, leaving a widow and four children, Elias, Sylvester, Emma and Stephen. In 1876 his real estate was sold under proceedings in partition, Sylvester and Emma having in the mean time died, the former leaving three children, and the latter leaving one, the present use plaintiff, Mrs. Ullom. By a family arrangement before or at the time of the sale, the guardian of Sylvester's children purchased one purpart and Stephen became the nominal purchaser of the other three parts, paying for them by several mortgages upon them to Elias, who was the trustee to make the sale, and who was also executor of Emma, and testamentary guardian of her child, Mrs. Ullom, then a minor. These sales were confirmed by the orphans' court. Thereupon, in accordance with the previous agreement, Stephen conveyed two of the parts purchased by him to Elias, and the mortgage upon the remaining part which he retained, the one now in suit, was to be treated as paid and canceled. The receipt put on the record was not given until 1889, but the transaction, according to Stephen's testimony, was completed and full settlement made in 1877, except as to the widow's share of the purchase money in lieu of dower, the interest of which was payable to her for life. She did not die until 1894. At her death it is admitted that the owelty then due the heirs, including Mrs. Ullom, was paid by appellees. By this settlement, as will be observed, the four purparts of the estate of Abel Cary became vested in his four children or their heirs, one in Stephen, one in the guardians of Sylvester's children, and two in Elias one in his own right, and one as executor of Emma and guardian of her only child. No money passed between the parties in the settlement, and it appears that none was intended to pass. Stephen testifies that all the parties were represented in the agreement which was made after an examination and valuation of the four farms which the common ancestor had left; that the prices bid at the sale were fair and satisfactory; that the whole transaction was open and honest; and that Elias at that time not only had the authority to receive payment for the present appellant but that he was entirely solvent, considered to be well off, and the transaction was never questioned until fifteen years later, when Elias's circumstances had changed.

This testimony is uncontradicted, and it was offered on the part of appellant. She must stand or fall by it. It is plain that the transaction was honest and unimpeachable in substance. If Elias had given to Stephen his check for the purchase money of the two purparts conveyed to him by Stephen, and Stephen had then passed it back or given his own check for the amount of the mortgage on his retained purpart, the form would have been as unimpeachable as the substance. But no money was intended to pass, nor was any required by the agreement. Elias paid no money to Stephen for the conveyances to him, for Stephen had paid none at the sale, but had given mortgages to Elias for the price, which would merge when Elias acquired the title. And notwithstanding the mortgage Stephen owed no money to Elias on the retained purpart, for after his conveyance of the other two, he had only his one fourth part of his father's estate, to which he was entitled, and which it was not intended at the time of the sale or afterwards that he should pay for in cash, if the agreed plan was carried out. If the mortgage on his purpart had been satisfied as to the two thirds then distributable by Elias at the time, as was intended, and as should have been done, there would never have been any room for question. The only occasion for naming prices in money was apparently to liquidate the widow's interest. This was to continue as a fixed charge on the land during her life, and to be distributable on her death to the heirs of Abel Cary. It had therefore to be definitely ascertained in amount. Beyond this the agreement left no occasion for the use of money in the transaction. Under some circumstances the absence of actual passage of money in settlements of apparent pecuniary liabilities affords evidence of fraud, but in the present case the uncontradicted testimony completely answers any such presumption. There was nothing on which a finding of fraud could be based. There are some other questions raised by the appellees to sustain the nonsuit, including the right of the use plaintiff to sue in the name of Elias Cary, trustee for the heirs of Abel Cary, without having shown a settlement of accounts in the orphans' court from which the amount due to her mother as an heir of Abel Cary would appear, or the amount due herself as legatee of her mother. But

as we hold that on the merits of the case as presented it could not be successful against Stephen Cary himself, it is not worth while to discuss the other matters.

Judgment affirmed.