## Connell *v*. Metropolitan Life Insurance Company.

*Insurance—Life insurance—Application detached from policy—Act of May* 11, 1881, *P. L.* 20.

In an action upon a policy of life insurance where it appears that the policy does not designate the beneficiary, the insured may introduce in evidence the application, to show the beneficiary, although the application is detached from the policy, but this will not enable the insurance company to take advantage of the warranties contained in the application contrary to the Act of May 11, 1881, P. L. 20.

*Life insurance—Covenants in warranties in the policy.*

The Act of June 23, 1885, P. L. 134, relating " to warranties in the application for life insurance policies," has no application to the express covenants of the policy itself, not directly dependent upon such warranties.

A policy of life insurance contained this provision : " This form of policy is issued upon an application which omits the warranty usually contained in applications, and the policy contains the entire agreement between the company and the insured." The application was not attached to the policy. The policy itself provided that it should be void if the insured " has had before this date any pulmonary disease or chronic bronchitis or cancer, or disease of the heart, liver or kidneys." The defense was that at the time of the issuance of the policy the insured had Bright's disease, and that she continued to suffer from and died of that disease. This was supported by evidence. *Held* (1) that the covenant in the policy was an unequivocal and absolute covenant; (2) that whether the policy was void was dependent upon actual conditions, past or present, and not upon the knowledge of these conditions possessed by the parties; (3) that the existence of the disease was a fact to be established by competent evidence, and the burden was upon the defendant.

Argued Nov. 21, 1900. Appeal, No. 112, Oct. T., 1900, by defendant, from judgment of C. P. Delaware Co., Dec. T., 1897, No. 103, on verdict for plaintiff in case of Owen Connell v. The Metropolitan Life Insurance Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit on a policy of life insurance. Before CLAYTON, P. J.

At the trial it appeared that on June 9, 1894, Margaret Connell made a written application to the defendant company for insurance upon her life. The application mentioned Owen

Connell, her husband, as beneficiary. The application also contained a warranty that the representations and answers made by the applicant were correct and true, and that any untrue answers rendered the policy null and void. In the answers the applicant stated that she had no disease of the kidneys. The application was not attached to the policy.

The policy contained the following provision : " This form of policy is issued upon an application which omits the warranty usually contained in applications, and the policy contains the entire agreement between the company and the insured and the holder and owner thereof."

The policy further contained this clause : " This policy is void if the insured before its date has been rejected for insurance by this or any other company, or has been attended by a physician for any serious disease or complaint; or has had before said date any pulmonary disease, or chronic bronchitis, or cancer or disease of the heart, liver or kidneys ; or, if before said date any parent or brother or sister of insured have died of any pulmonary disease, or bronchitis or any scrofulous disease."

Dr. Stover, a witness called by the defendant, testified he had attended the insured in January, 1893, for Bright's disease, and that she had died from it in 1895. He was asked this question on cross-examination :

Mr. Schaffer: " Q. Doctor, did you ever tell Margaret Connell what was the matter with her ? "

Mr. Fronefield: " One moment." That is objected to as immaterial, and irrelevant.

The Court: I will receive it.

Mr. Fronefield: Will your honor give me an exception?

The Court: " Yes." Exception and bill sealed. [1]

Mr. Schaffer: " Q. Did you ever tell her what was the matter with her ? A. No, sir. Q. Did she know that she had Bright's disease ? A. Not to my knowledge. Q. Did she know that she had any kidney disease to your knowledge ? A. Not to my knowledge. No, sir. Q. About July——"

The Court: " Q. What had been her state of health previous to that; good or bad? A. Previous to the kidney disease her condition was very good; she was able to attend to her house-

hold business.    Q. It was pretty good before that?    A. To the best of my knowledge."

Mr. Schaffer: " Q. What was her general condition of health in July, 1894?    A. She was not under my care at all then. Q. She had recovered sufficiently at that time to have dispensed of your services?    A. Yes, sir.    Q. Doctor, what was her appearance at that time or about that time?"

Mr. Fronefield : That is objected to, if the court please.

The Court: I think it can go in evidence.    Exception and bill sealed. [2]

" Q. Doctor, might a person have Bright's disease and not know it?"

Mr. Fronefield : " One minute."

The Court: I think your exception covers all that.

Mr. Fronefield: I want to be protected.

The Court: I will admit the question.    Exception and bill sealed. [3]

The Court: If the woman believed she was in good health and presented the general appearance of good health, it bears materially upon the question whether there was anything to induce the company to make an examination.    It is the pinch of the case as I understood it under the act of assembly, the representation must be material to the issue.

When D. H. Kelly was on the stand he was asked these questions on cross-examination :

Mr. Schaffer: " Q. Did you solicit and write this policy upon the life of Margaret Connell?    A. I did.    Q. What was her appearance at the time that this was written as indicating whether or not she was in good or bad health?"

Mr. Fronefield: One minute, that is objected to because it is immaterial and irrevelant.

The Court: I will receive it upon the good faith of the woman, that if she believed she was in good health and nothing to warn her that she was not, it may be a question upon the materiality of representation.    Exception and bill sealed. [4]

" A. Yes, sir; she appeared to me to be in very good health."

The court charged in part as follows :

Now the plaintiff alleges that the true meaning of the contract between the deceased and the insurance company was

that the insured should make answers which she believed to be true, and which she had no reason to believe to be untrue, and that while it may be admitted that she had Bright's disease at the time that the policy issued, the allegation is that she did not know and could not have known it without being examined by some physician or some person giving her information upon that subject. Now the policy alleges, "This policy shall be void if the insured before its date has been rejected for insurance by this or any other company." Now, of course, if she had been rejected she would know it and if she said she did not it would be false and fatal to this policy.

["Have you been attended by a physician for any serious disease or complaint?" Now they do not require that she shall inform them if she has had a physician for any complaint, but for any serious disease or complaint. Now this lady knew that she had a physician for the grippe. If you find that was not considered a serious complaint, it would not be fatal to the policy, because this policy being written by the defendant, it is to be construed strictly against the one that wrote it ; they chose the language, she did not. The policy is prepared by skilful lawyers, and the construction to be put upon it by the court, where there is reason for doubt, is to be against the company and not in its favor.] [5]

["Had you before said date any pulmonary disease or chronic—disease of the heart, liver or kidneys?" I consider that to mean that if she had any of these diseases and knew it, it was her duty to communicate it, or if she had any of these diseases and could have known it by any reasonable means ; or if there was any reason for her to suspect that she had any of these diseases, I construe this policy to mean that then it was her duty to communicate it. That is the construction I put upon this policy, and according to the construction put upon such policies by the Supreme Court. It is to have a reasonable construction. Would it be reasonable if this lady had answered that "No" to a question that could not be known only by a post-mortem examination? Suppose she was born with tubercles undeveloped or virus in her blood, and it was found in twenty or thirty years that she had been born with it, and that it could only be discovered by a most critical examination by a most skilful physician. Suppose she had said she

never had any symptoms of consumption, and at her death it was proved that she was born with undeveloped tubercles in her lungs, and that she had these tubercles in the state undeveloped at the time that the policy was issued, but that they were not noticeable, but that a post-mortem examination showed that the lungs were diseased, although nobody knew it, and nobody could know it without the knife of the dissector. I say that would be unreasonable, and therefore it is not the proper construction to put upon this contract.

I, therefore, construe this second clause of the conditions of this policy to mean that the insured at the time she made her answers believed them to be true, had no reason to doubt of their truthfulness, had nothing to put her upon inquiry upon the subject and that there was nothing that any ordinary person could notice that would indicate that she had any of these diseases.

That is the construction I put upon this clause. That it does not mean to absolutely warrant that the insured has none of these diseases, but it means that to her knowledge and belief she had no disease of any kind such as described here.

If, therefore, gentlemen of the jury, you come to the conclusion from the evidence that this woman did not know that she had any of these complaints, and had not any reasonable ground to suspect that she had, and that there was no external evidence of such disease and could only be disclosed by a critical examination, then I charge you that her answers to this second clause of the conditions were not material, because the company would in all probability not inquire any further, and would be willing from the appearance of the patient and believing that she should know whether she had them, make the policy; the materiality means something that would have induced the company to suspect, and whenever the company finds that the woman did not know herself and that she answers truly that she does not know of any complaints, then the probability is that they would go no further, and if there was anything to put them upon their guard, then it would be their duty to inquire further and the answers would be material.] [6]

[" Now name the last physician who last attended life proposed, and when and for what complaint." The answer is "No." And I say to you gentlemen that that " No " answer, it is noth-

ing else.   How can " No " answer this question?   " Name the
last physician who last attended the life proposed."   " ' No,' I
won't name him."   " Now then there is your answer, go. and
find him out yourself."   That would be one answer to it.   " ' No,'
I won't answer it."   Then they would have to get their answer.
Then it was their duty to either stop or insist upon her naming
him.   Question, " And when? "   " No."   What answer is that?
And when did he attend you?   You might as well say " No, I
won't answer," as " No, I have none."   " And for what com-
plaint? "   " No? "   I charge you gentlemen that that virtually
has never been answered, and that therefore that that answer
be made in good faith and they were willing to take that
answer " No " is not a sufficient defense to this policy.   They
had no right, no business to take such an answer.   They had
no right to read into that anything but what she put there, and
that being ambiguous, and we have no other testimony upon
that subject, I charge you that is not sufficient to avoid this
policy.   Now let us suppose that she had said " Yes."   Would
that be an answer to it?   Why, not at all.   And if they saw
proper to take " yes " to the question that is there, and " yes "
would be just as sensible an answer to that question as " no,"
and either of them are no answer to it at all.   Compound ques-
tions cannot be answered by yes or no.   I, therefore, charge
you that that word " No " written there is not sufficient in it-
self without explanation to avoid this policy.]   [7]   [Now gen-
tlemen, I have given you the construction of the policy.   Let
me repeat the construction I have put upon it.   It means that
if the insured has any of these complaints and conceals them
and knows it, or ought to have known it from any outside evi-
dence or certain circumstances, then a false answer will avoid
the policy; or, if any of these complaints existed and the insured
knew it or ought to have known it, it would avoid the policy;
and I take it that that is what the clause means, and when the
minds of these two people came together, they came together
upon that theory that does not apply to any trouble or disease
of which the deceased could have knowledge.]   [8]

[The second is as to the physician and the complaint, and I
charge you that that " No " is too ambiguous to avoid the policy.
And if you come to the conclusion under the evidence that this
woman did not know that she had any of the diseases named

in this policy when she applied for it, and that for the certain circumstances, from her general appearance, and from the fact that her physician never told her, she was not aware that she had any disease of any kind, then it was no such a material representation as would avoid the policy.] [9]

Verdict and judgment for plaintiff for $67.28. Defendant appealed.

*Errors assigned* among others were (1–4) rulings on evidence, quoting the bill of exceptions. (5–9) Above instructions, quoting them.

*Hazard Dickson* and *W. Roger Fronefield*, for appellant.— The learned trial judge tried the case upon the erroneous theory that the insured must know, and that we must prove her knowledge, that her answers were untrue, or in other words that we must prove her bad faith, even though her answers were to matters material to the risk: March v. Metropolitan Life Insurance Co., 186 Pa. 629; American Union Life Insurance Co. v. Judge, 191 Pa. 484.

It is uncontradicted that the insured did have the attendance of a physician for one year prior to April, 1894, only three months before the date of the policy, for Bright's disease, which is a serious disease, and which caused her death in May, 1895. The breach of this condition avoids the policy: March v. Metropolitan Life Ins. Co., 186 Pa. 629; McGraw v. Metropolitan Life Ins. Co., 5 Pa. Superior Ct. 488; Schwartz v. Metropolitan Life Ins. Co., 5 Pa. Superior Ct. 285.

The judge erred in making knowledge of the insured the criterion: Bruns v. Penna. Mut. Life Ins. Co., 189 Pa. 579; Blooming Grove Mut. Fire Ins. Co. v. McAnerney, 102 Pa. 335; Smith v. Northwestern Mut. Life Ins. Co., 196 Pa. 314; Com. Mut. Fire Ins. Co. v. Huntzinger, 98 Pa. 41; March v. Metropolitan Life Ins. Co., 186 Pa. 629; Swank v. Phillips, 113 Pa. 482.

If the insured was not in sound health at the issue of the policy, there can be no recovery: Dietz v. Metropolitan Life Insurance Co., 168 Pa. 504; Schwartz v. Metropolitan Life Insurance Co., 5 Pa. Superior Ct. 285; McCraw v. Metropolitan Life Insurance Co., 5 Pa. Superior Ct. 488; March v. Metropoli-

tan Life Insurance Co., 186 Pa. 629; Barnes v. Fidelity Mut.
Life Insurance Assn., 191 Pa. 618.

*William I. Schaffer*, with him *Edwin A. Howell*, for appel-
lee.—The application not being attached to the policy, as re-
quired by the act of May 11, 1881, the defendant can set up
no defenses of which it is the basis: Metropolitan Life Ins. Co.
v. Jenkins, 5 Cent. Repr. 875; Hebb v. Kittanning Ins. Co.,
138 Pa. 174; Norristown Title Co. v. Hancock Ins. Co., 132
Pa. 385.

It is not the law that there can be no recovery on a policy
of life insurance if the deceased had, unknown to himself, a
latent disease at the time the policy was issued: Mouler v.
American Life Ins. Co., 101 U. S. 708 and 111 U. S. 335;
March v. Metropolitan Life Ins. Co., 186 Pa. 629.

The defendant's case shows that there was no fraud upon
the part of the insured.

This case is for the jury, whether the application is in or
not: Hermany v. Fidelity Mut. Life Ins. Assn., 151 Pa. 17;
Schwartz v. Metropolitan Life Ins. Co., 5 Pa. Superior Ct. 285;
McGraw v. Metropolitan Life Ins. Co., 5 Pa. Superior Ct. 488;
Barnes v. Fidelity Mut. Life Association, 191 Pa. 623; Keat-
ley v. Travelers' Ins. Co. of Hartford, Conn., 187 Pa. 197;
Smith v. Metropolitan Life Ins. Co., 183 Pa. 504; Home Mut.
Life Assn. v. Gillespie, 110 Pa. 84; Kister v. Lebanon Mut.
Ins. Co., 128 Pa. 565.

OPINION BY W. D. PORTER, J., March 19, 1901:

The application for this insurance was not attached to the
policy, and the representations therein contained were not avail-
able by the defendant company as a defense to the action.    The
policy did not designate a beneficiary, and the admission of the
application for that purpose was proper: Norristown Title Com-
pany v. Hancock Insurance Company, 132 Pa. 385.    The Act of
May 11, 1881, P. L. 20, imposes a duty upon the insurer for the
protection of the assured, and was not intended to prevent the
latter from merely using the application as evidence for the pur-
pose of identifying the person for whose benefit the contract was
made.    The general rule is that a party offering a paper in evi-
dence must offer the whole of it, just as it is, and if it requires

explanation the burden is upon him to explain : Cary v. Cary, 189 Pa. 65.    The plaintiff offered the application for the purpose of designating the beneficiary, and during the subsequent progress of the trial, the defendant sought to take advantage of the alleged warranties contained in the paper.    The provisions of the act of 1881 involve more than a mere denial of the right of the insurer to offer in evidence an application not attached to the policy, and the legislative intent manifestly was to deprive the insurer of any benefit whatever from such an irregular application.    The words of the act are : " Nor shall such application or by-laws be considered a part of the policy or contract between such parties."    The effect of this legislation is to take away from the irregular application any quality which it might have to in any manner affect the contract of insurance.    The act did not take away from the parties their constitutional right to make contracts, but it did impose a reasonable regulation as to the manner in which those contracts should be evidenced. When such an irregular application is admitted for the purpose of identifying the beneficiary, the policy being silent upon that point, the warranties of the application are not thus made a part of the contract.    The application was in evidence for all lawful purposes, but it could not have a force and effect which was forbidden by the express terms of the statute.    Independently of the act of 1881, the warranties contained in the application were deprived of any efficacy ; the parties had excluded them by the express terms of the policy.    When the insurance company incorporated into its agreement this condition, viz : " This form of policy is issued upon an application which omits the warranty usually contained in applications, and the policy contains the entire agreement between the company and the insured, and the holder and owner thereof," it must be held to have meant what it said.    It would still be competent to show that the company had been induced to issue the policy through misrepresentations, but to establish that defense it must be shown that the misrepresentations were fraudulently made. This is, no doubt, what the learned judge of the court below had in mind when he held that the diseased condition of the assured at the time the policy was issued did not constitute a good ground of defense, unless the jury were satisfied that she knew of her condition.

It must not be forgotten, however, that there is a difference between obtaining a contract through a misrepresentation as to a fact, and making the existence of that fact a condition upon which the contract, by its written terms, is dependent. The insurance company having, by its express contract, waived the warranties contained in the application, sought to protect itself by incorporating certain conditions into the contract. A part of the agreement between the parties was, "This policy is void if the insured before its date has been rejected for insurance by this or any other company, or has been attended by a physician for any serious disease or complaint; or has had before this date any pulmonary disease, or chronic bronchitis, or cancer or disease of the heart, liver or kidneys." These were unequivocal absolute covenants. Whether the policy was void was dependent upon actual conditions, past or present, and not upon the knowledge of those conditions possessed by the parties. The act of June 23, 1885, relates "to warranties in the applications for life insurance policies," and has not application to the express covenants of the policy itself, not directly dependent upon such warranties. The defense in this action was that the assured, prior to and at the time of the issuance of the policy, had Bright's disease of the kidneys, and that she continued to suffer from and died of that disease. If this was true, the express covenant of the parties, hereinbefore recited, cannot be disregarded, and the policy was void: March v. Metropolitan Life Insurance Co., 186 Pa. 629; Meyers v. Woodmen of the World, 193 Pa. 470; Smith v. Northwestern Mutual Life Ins. Co., 196 Pa. 314; McGraw v. Metropolitan Life Insurance Co., 5 Pa. Superior Ct. 488; Schwartz v. Metropolitan Life Insurance Co., 5 Pa. Superior Ct. 285; American Union Life Insurance Co. v. Judge, 191 Pa. 484; Barnes v. Fidelity Mut. Life Assn., 191 Pa. 618. The existence of the disease was a fact to be established by competent evidence, and the burden was upon the defendant. The credibility of the witnesses was for the jury, and it was proper in the cross-examination to ask any question which tended to throw light upon that subject; for that reason, the first four assignments of error are dismissed.

While some of the remaining fifteen assignments of error refer more directly to the effect of the representations made by the assured in her application, the language of the learned judge

of the court below had a direct bearing upon the effect to be given to the express covenants contained in the policy. The result was to make the rights of the defendant, under those express covenants, dependent upon the knowledge of the assured as to her own condition. In this there was error and the specifications must be sustained.

The judgment is reversed and a venire facias de novo awarded.