208    473
215    ²129

# Fowler, Appellant, *v.* Meadow Brook Water Company.

*Contract—Rescission—Intoxication—Restoration of status quo.*

A contract made by a person so destitute of reason as not to know the consequences of his contract, though his incompetency be produced by intoxication, is voidable, and may be avoided by himself, though the intoxication was voluntary, and not procured by the circumvention of the other party.

Where a person seeks to repudiate a contract upon the ground that when he made it he was so completely intoxicated as not to know or understand what he was doing, he must show not only that he was incapacitated by intoxication, but also that he rescinded the agreement within a reasonable time after his recovery, and placed the other party in statu quo, by returning the consideration received. If the consideration was a release in full from the obligations of a prior contract under which he was liable to incur serious losses, he must surrender such release.

Argued Feb. 23, 1904.   Appeal, No. 27, Jan. T., 1904, by plaintiff, from judgment of C. P. Lackawanna Co., Jan. T., 1899, No. 459, on verdict for defendant in case of John F. Fowler v. Meadow Brook Water Company.   Before DEAN, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.   Affirmed.

Trespass to recover the value of tools alleged to have been converted to defendant's use.   Before CARPENTER, J.

At the trial it appeared that John F. Fowler, plaintiff, and John T. Williams as partners had a contract with the defendant, the Meadow Brook Water Company, to construct a tunnel. In this work they used a large quantity of tools.   Williams, desiring to be released from the contract, entered into an agreement with the defendant by which he turned over to the defendant the tools in consideration of release from the contract and bond.   Williams took the paper to Fowler who signed it. Fowler claimed that his signature was procured when he was in the state of intoxication.   There was no evidence, however, of fraud or duress.   It did not appear that Fowler made any prompt effort to rescind the agreement, or to surrender the release, or carry out the original contract.   Plaintiff presented these points :

1. That one who was so far intoxicated that he did not know what he was doing at the time when he signed a paper, and was not able to comprehend the nature and effect thereof,

the fact that he did sign such a paper while in such a condition does not make it binding upon him; and if the jury find in this case that the time Mr. Fowler signed the agreement of December 1, 1898, he was intoxicated to a degree that he did not know what he was doing, and was not able to comprehend the nature and effect of the paper he signed, if the jury find he did not sign it, then such a paper will not be a bar to his recovery in this case. *Answer :* This point is refused. [1]

2. That even if the jury should find that Williams & Fowler would have lost money by the continuance of this contract, and also that the Meadow Brook Water Company lost money by reason of having to get some one else to complete it, yet if the jury should find that Mr. Fowler was the one half owner of the goods in suit; that the defendant company converted these goods to its own use ; that the paper of December 1, 1898, is not a valid paper so far as Fowler is concerned, then Fowler is entitled to a verdict for the fair market value of his interest in the property converted by the defendant, with interest from the date of the conversion. *Answer :* This is affirmed with the suggestion, however, that whether the paper of December 1, 1898, was a valid paper or not, must be understood to mean whether it was fraudulent and oppressive, and not to depend upon the intoxication of the plaintiff. [2]

The court charged in part as follows :

[We thought and still think that the plaintiff was entitled to have this evidence submitted to you in view of the fact that he had testified that he did not sign the paper of December 1, 1898, of which there is positive evidence, from which, if you believe it, you can find that he did sign it. For that purpose and to that extent the evidence of the plaintiff's intoxication is submitted to you. The effect of that evidence upon the validity of the paper of December 1 is primarily for the court, and as we have already said, while the precise question is somewhat barren of authorities, we are of opinion, and say to you as a matter of law, that this paper executed as it was under the circumstances which have been detailed to you, is not nullified or made invalid by the intoxication of the plaintiff, even admitting for that purpose the most that could be found here by the evidence on that subject, unless you should find

that fraud or undue influence was practiced upon him, or that the defendant knew, or by something appearing in the transaction ought to have known of the plaintiff's condition at the time, or unless the transaction was manifestly unfair and oppressive.] [5]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1, 2, 5) above instructions, quoting them.

*A. A. Vosburg,* with him *Charles W. Dawson,* for appellant. —A contract made in such a state of intoxication as to deprive the party of his discretion, and ordinary judgment, will be set aside in equity, although the other party had no agency in procuring the intoxication : French v. French, 8 Ohio, 214 ; Van Wyck v. Brasher, 81 N. Y. 260 ; Johnson v. Harmon, 94 U. S. 371.

*Everett Warren,* of *Willard, Warren & Knapp,* for appellee. —A party seeking to avoid the contract must rescind it : Carpenter v. Rodgers, 61 Mich. 384 (28 N. W. Repr. 156).

He must rescind within a reasonable time : Cummings v. Henry, 10 Ind. 109.

The burden of showing rescission is on the party setting up intoxication : Carpenter v. Rodgers, supra ; Smith v. Williamson, 8 Utah, 219 (30 Pac. Repr. 753).

OPINION BY MR. JUSTICE POTTER, March 21, 1904 :

The plaintiff in this case sought to repudiate a contract, upon the ground that when he made it, he was so completely intoxicated as not to know or understand what he was doing.

Upon the trial the learned judge of the court of common pleas charged the jury that in order to avoid the contract, the plaintiff must prove not only the fact of intoxication, but in addition must show one of three things :

First, that the contract was procured by fraud or undue influence.

Second, that the defendant knew, or should have known by something appearing in the transaction, of the plaintiff's condition at the time, or

Third, that the transaction was manifestly unfair or oppressive.

We think this was going too far.   In Bush v. Breinig, 113 Pa. 310 (p. 316), we said: " The rule formerly was, that intoxication was no excuse, and created no privilege or plea in avoidance of a contract ; but it is now settled according to the dictate of good sense and common justice, that a contract made by a person so destitute of reason as not to know the consequences of his contract, though his incompetency be produced by intoxication, is voidable, and may be avoided by himself, though the intoxication was voluntary, and not procured by the circumvention of the other party."

In the present case the court was therefore in error in its instruction to the jury with regard to the effect of the intoxication of the plaintiff upon the validity of the contract.   But in order to recover, it was incumbent upon the plaintiff to prove not only that he was incapacitated by intoxication, when the contract was made which he now seeks to repudiate, but he must go further and show that he rescinded the agreement within a reasonable time after his recovery.   The rule with regard to rescission is thus stated in 21 Am. & Eng. Ency of Law, 84 : " Where a contract is sought to be rescinded by one of the parties thereto, he must place the other in statu quo.   He will not be allowed to repudiate a contract and retain the benefit derived thereunder against equity and good conscience, but must return, or offer to return, such benefit."

There is also a thorough discussion of the question by Judge SHARSWOOD in Beetem v. Burkholder, 69 Pa. 249, which he begins by saying that, " Whenever one of the parties to a contract has the right to rescind it, and elects to do so, before commencing his action to recover back the money which he has paid, he must give notice to the vendor and offer to return the thing sold."

In the present case the consideration received by the plaintiff was a release in full for himself and his partner from the obligations of a prior contract under which he was liable to incur serious losses.   We have examined the testimony carefully and have not found anything to indicate any offer by the plaintiff to restore the consideration which he had received for the contract which he now attempts to repudiate, or that he attempted or offered in any way to restore the status quo.

His own account of his action in this respect is given in his

testimony concerning his interview with the president of the defendant company. The plaintiff says he went to Mr. Scranton's office to ask if he might resume work. In reply the plaintiff states, " He asked me if I didn't understand my situation. I said, ' What situation ? ' He said, ' Don't you know that we have took the contract away from you ? ' I said, ' No, sir.' ' Well,' he said, ' it is so, and you cannot go on with it.' ' Well,' I said, ' I cannot leave my tools there for you.' He said, ' I dare you to take them away.' Them is all the words." We cannot gather from this the expression of any desire or willingness to restore the defendant company to the position in which it was prior to the execution of the agreement by which it gave up its bond of indemnity and cancelled the original contract and released the plaintiff and his partner from all liability for the further prosecution of the work as required by the former agreement. The plaintiff cannot be allowed to retain the benefits of the release from his former contract and at the same time recover for himself the value of his interest in the tools and machinery which he had transferred by means of the second agreement, to the defendant company, as part of the consideration for that release.

Acting upon the new agreement, which was made in perfect good faith, the defendant company upon their part annulled the former contract and released the plaintiff and his partner from all liability thereunder, and surrendered the bond of indemnity.

In order to place the defendant company in statu quo, it would have been necessary for the plaintiff, before beginning this action, not only to have shown a bona fide willingness to complete the original undertaking and carry out that contract in accordance with its terms and conditions, but it was necessary also to obtain the assent and agreement of his partner thereto ; it would have been his duty also to have reinstated or restored the bond of indemnity given to the defendant company to secure the faithful performance of the work.

As the testimony does not show that the plaintiff did any of these things, the assignments of error must be dismissed and the judgment is affirmed.