Savitz *v.* Gallaccio et al., Appellants.

590

Argued October 3, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Morton B. Weinstein,* for appellants.

*Harry Norman Ball,* with him *Morris L. Weisberg,* for appellee.

OPINION BY WRIGHT, J., November 16, 1955:

Phil Savitz instituted an action in assumpsit against Fred Gallaccio and Frank Reale, individually and trading as Western Construction Company, to recover ten weeks salary under a written contract of employment. The jury returned a verdict in favor of plaintiff. Defendants' motions for judgment n.o.v. and for a new trial were refused, and judgment was entered on the verdict. This appeal followed.

The contract in question was prepared by appellants' attorney, and was executed by the parties in November 1951. It set forth that appellants had entered into an agreement with the City of Philadelphia to construct a sewer on Castor Avenue; that they were desirous of obtaining additional working capital, and that appellee had a sum sufficient to meet their needs; that appellants were seeking the services of an experienced and competent general superintendent to super-

vise the construction of the sewer, and that appellee enjoyed "a valuable reputation for being a competent supervisor of that type of construction work which has been gained as a result of 40 years' experience". By the terms of the contract appellee loaned appellants $14,000.00, which sum was to be repaid no later than the date of final settlement by the City, and appellants agreed to employ appellee as general superintendent of the sewer job at a salary of $150.00 per week. The employment was to commence at such time as construction of the sewer was started and to continue until the sewer had been completed and was accepted by the City. The contract also contained a bonus provision not here involved.

The sewer job commenced in February 1952. At that time, appellee was hospitalized as the result of an accident. According to appellee's testimony, he talked with appellants daily and advised them about the work. However, appellants testified that it was necessary for them to employ another superintendent during this period. Appellee testified that appellants requested him to come to work as soon as possible and insisted that he start in May, even though he was still on crutches. This was denied by appellants, who testified that, when appellee appeared at the job, he was seeking work and they orally agreed to employ him at $150.00 a week for an indefinite period. It is undisputed that appellee actually did start to work on May 28, 1952, and that he was paid a salary at $150.00 per week. He testified that the job was then twenty percent completed. On November 5, 1952, appellee was informed that appellants could not use him any more. At that time the job was ninety percent completed. During the period from May to November, appellee was the only superintendent on the job. Neither the appellants, the City Engineer, the City Inspector, nor

any other person complained to appellee that the work was being done improperly. However, appellants introduced considerable testimony tending to show that appellee was unfit to act as a superintendent. Appellee testified that he made no effort to secure other work after his discharge because, at that time of the year, employment as a superintendent was impossible to obtain.

Appellants first contend that appellee's "failure and incapacity" to begin work caused them to change their position by the employment of another superintendent, which "evidences conclusively" that they elected to regard appellee as having breached the written contract. They base this argument upon section 282 of the Restatement, Contracts, set forth in the footnote.[1] Assuming that there was a "breach" by the appellee, the question whether appellants elected to rescind was a factual issue for the jury to determine. While appellee's physical incapacity might have been utilized by appellants to relieve them from performance, the evidence justified the jury in finding that appellee provided, and appellants accepted, advisory service while appellee was in the hospital; further that, during the entire period of appellee's hospitalization, appellants took no steps to complete rescission of the contract by offering to repay the loan so as to restore appellee to his previous status. See *Fowler v. Meadow*

---

[1] "In promises for an agreed exchange a promisor is discharged from the duty of performing his promise if the return performance has become impossible by the death or physical incapacity of some person whose action is requisite, or if the promisor materially changes his position because such a person's condition makes it probable that he will either be unable to perform the requisite action or able to perform it only at the risk of causing death or serious illness, provided that the promisor has not himself wrongfully caused the death, incapacity or personal condition or assumed the risk of it".

*Brook Water Co.,* 208 Pa. 473, 57 A. 959. "Where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so": *Holmes Electric Protective Co. v. Goldstein,* 147 Pa. Superior Ct. 506, 24 A. 2d 161. There was ample testimony to support a finding by the jury that, when appellee actually commenced work, the parties proceeded under the original contract. Appellants then became liable for their subsequent failure to perform. See Restatement, Contracts, section 309, considered in *Gray v. Maryland Credit Finance Corp.,* 148 Pa. Superior Ct. 71, 25 A. 2d 104.

Appellants next contend that, since the sole issue pleaded by appellee was unlawful discharge, it was error for the trial judge to admit evidence concerning that portion of the contract dealing with the loan; further that this evidence was "malicious and tended to inflame prejudice and confuse the jury". No objection was made at trial to the admission of the entire written contract. A party offering a paper in evidence must offer the whole of it just as it is, and, if it requires explanation, the burden is upon him to explain: *McMichael v. Tucker,* 84 Pa. Superior Ct. 602; *Cary v. Cary,* 189 Pa. 65, 42 A. 19. Appellants complain about questions propounded on cross-examination as to whether they repaid the loan at the time when according to their contention, appellee was employed under a new oral contract. In the words of Judge PIEKARSKI for the court below: "What the defendants overlook in this particular respect is that the defendants themselves pleaded rescission of that written agreement and employment under the subsequent oral contract. Since they pleaded rescission of this contract, it became very material to know whether their alleged rescission became a de facto situation. If, as

the defendants contended, the written contract was rescinded, did the defendants return to the plaintiff the loan; if not why not?" Whether or not appellee had been made whole following appellants' purported election to rescind was a proper subject of inquiry.

Appellants next contend that appellee's failure to seek other employment bars him from recovery. They rely upon Comment d to section 336 of the Restatement, Contracts, which states in substance that if an injured party fails to make a reasonable effort to mitigate damages, with the result that his harm is greater than it would otherwise have been, he cannot recover the avoidable and unnecessary increase. Appellants attempted to show that jobs for superintendents were available in the Philadelphia area. The testimony in this connection was conflicting and contradictory. The trial judge expressly charged, as requested by appellants, that, "if the jury believes from the evidence in the case that plaintiff might by the exercise of reasonable diligence have secured other similar employment at the same rate of pay, then the jury must find that no damages are due the plaintiff". Furthermore, the trial judge had previously charged, quoting from *Speier v. Locust Laundry,* 63 Pa. Superior Ct. 99, that " 'Where an employe has been discharged before the expiration of his term of employment without sufficient excuse, he is nevertheless bound to use reasonable efforts to obtain employment elsewhere. But the burden of showing that by reasonable efforts he may have found such employment is upon the defendant'. In other words the burden is placed, the job of convincing the jury by a fair preponderance of the evidence rests upon the defendants to show that if the plaintiff, when he was out of work, had used reasonable efforts to get work he might have gotten it". We consider this a correct statement of the law. See *Seiler v. New*

*York Ice Cream & Creameries, Inc.,* 71 Pa. Superior Ct. 32. The defense in question was one of mitigation, and the issue thus raised was a question of fact for the jury: *Coates v. Allegheny Steel Co.,* 234 Pa. 199, 83 A. 77.

Appellants next contend that the verdict "was manifestly capricious and contrary to the clear weight of evidence in quantity and quality in that plaintiff did not competently and skillfully perform under his agreement to supervise defendants' sewer construction and therefore appellants properly discharged him": and further "that the verdict was capricious, perverse and improper". The granting of a new trial on the ground that the verdict is against the weight of the evidence is peculiarly for the court below, and its decision is not a matter for review on appeal in the absence of palpable abuse of discretion: *Yago v. Pipicelli,* 343 Pa. 222, 22 A. 2d 699. And see *Heaver v. Philadelphia Rapid Transit Co.,* 120 Pa. Superior Ct. 520, 183 A. 110. As stated in appellants' brief, the "evidence conflicted heavily on almost every point". An itemized review would unduly prolong this opinion, and would serve no useful purpose. It is sufficient to note that our detailed examination of the voluminous record clearly reveals that there was ample testimony to support the verdict.

Appellants' final contention is "that the trial court committed basic reversible error in failing to instruct the jury on established methods of factual determination, such as quantity and quality of evidence, interested and disinterested witnesses, credibility of witnesses, the nature and weight of expert testimony, the shifting of burden of proof and the meaning of preponderance of evidence". Although there is merit in appellee's position that this contention was not raised in the lower court, *Megliss v. Bartoletta,* 159 Pa. Su-

perior Ct. 308, 48 A. 2d 18; *Angelcyk v. Angelcyk,* 367 Pa. 381, 80 A. 2d 753, we will consider it briefly. Appellants argue that "the jury never got a fair picture of the issue involved". To the contrary, it is our opinion that the charge was a commendable example of clarification and lucidity. The trial judge properly analyzed and submitted to the jury the issues involved. See *Archer v. Pennsylvania R. R. Co.,* 166 Pa. Superior Ct. 538, 72 A. 2d 609. Appellants presented twenty-seven points for charge. Yet they did not request any instructions or elaboration concerning the matters of which they now complain, and took only a general exception. Where a trial judge asks counsel if any further instructions are desired, counsel may not remain silent and afterward complain of matters which, if erroneous, could have been corrected: *Megliss v. Bartoletta,* 159 Pa. Superior Ct. 308, 48 A. 2d 18. And see *Se-Ling Hosiery, Inc. v. Magulies,* 364 Pa. 45, 70 A. 2d 854.

Judgment affirmed.