**INDUSTRIAL UNION OF MARINE AND SHIPBUILDING WORKERS OF AMERICA, AFL–CIO,**

and

**Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, Local 56, Plaintiffs,**

v.

**AMERICAN DREDGING COMPANY, a corporation, Defendant.**

**No. 27126.**

United States District Court
E. D. Pennsylvania.

Oct. 17, 1961.

On Reargument March 8, 1962.

M. H. Goldstein, Goldstein & Barkan, Philadelphia, Pa., for plaintiffs.

Eugene R. Lippman, Krusen, Evans & Byrne, Philadelphia, Pa., A. V. Cherbonnier, Satterlee, Browne, Cherbonnier, & Dickerson, New York City, for defendant.

GANEY, Circuit Judge*.

This matter is before us on plaintiffs' motion for summary judgment under F.R.Civ.P. 56, 28 U.S.C.A., in an action in which the plaintiffs ("Union") seek, pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, to enforce three arbitration awards rendered November 26, 1958. With one of the awards there has been compliance. Defendant ("Company") says that the other two awards, Grievances Number 921 and 923, are invalid and unenforceable in that they exceed the scope of the submission to the Arbitrator and were beyond his authority.

Grievance Number 921 was initiated to cure the layoff on February 7, 1958, of two employees, Edward Hynes and Theodore Krueger. The Arbitrator found that the layoff of those two employees was in violation of the collective bargaining agreement ("Contract") and ordered the Company to reinstate them with back pay. Between January 6 and February 7, 1958, Hynes and Krueger were reduced in pay from the skilled rate to the helper's rate and then laid off on February 7, 1958. Since Hynes and Krueger were respectively Shop Steward and Secretary of

---

* Specially designated to sit in the District Court.

the Union, the Union filed Grievance Number 921, asserting that the layoff of these two employees was improper and citing in support of this assertion Section 7 of the Article Fifteen of the Contract, which provides as follows:

"The Shop Steward and Secretary shall for the term of their office have top seniority for purposes of layoff and recall."

The Company contended before the Arbitrator that the "top seniority" rating applied only to certain departments and classifications of its shipyard and not to the whole of the yard and that, therefore, the layoff of the two employees was proper. The Arbitrator held that not only did Hynes and Krueger have "top seniority" on a yard-wide basis under the Contract, but that the Company in a prior instance recognized this construction of the Contract as a valid one.

Grievance Number 923 was initiated to cure the Company's violation of the Contract by discharging and locking out a number of employees.[1] The Arbitrator's award ordered that some of the discharged employees be reinstated without loss of seniority rights, some of them were to be given back pay, less any earnings they received elsewhere during the discharge period, while others were to be given the status of laid off employees—with rights depending on their length of service. Briefly, the following facts were the basis for this grievance. After the announcement of the layoff of February 7, 1958, some of the Company's employees went out on strike and began picketing the yard in protest. The Company demanded that the picketing cease and that any dispute be referred to arbitration as provided for in the Contract, and if that were not done it intended to take such action as in its opinion would protect its interest. Later the Company urged the Union to get the employees back to work, and promised to see to it that payment pursuant to a prior arbitration

award was made promptly, and also promised that meetings would be held to discuss the other grievances and to arbitrate them if necessary. On that basis the Union agreed that it would undertake to get the six men not involved in the layoff of February 7 back to work. In the meantime picketing of the yard continued until the morning of February 13, when the Union announced that the six men were ready to go back to work. A representative of the Company told the Union that he would arrange for the men to go back to work the next day or on the 17th "for sure". On Monday morning, February 17, 1958, when the six men reported to the yard ready for work, they were told for the first time that they were discharged. Around February 28, an understanding was reached between the parties that the six men would be put back to work, without prejudice to the position of either side. These six men returned to work on March 3; Hynes, Krueger and the others were not taken back. The Arbitrator found that the Company never attempted to discharge the men involved until February 17, and that it had, by agreeing to take them back, waived its right to discharge them for violating the no-strike and no-picketing provision of the Contract.

The Company recognizes that the Arbitrator's fact finding, except under limited circumstances not present here, is not reviewable. For this reason it does not contest his award concerning Hynes and Krueger prior to February 7, 1958. However, it claims that his interpretation of the scope of his authority is reviewable. In this connection, it asserts that he exceeded his authority when he ruled, over its protest, that it had waived its right to discharge the employees on February 17, for their violation of the no-strike and no-picketing provision of the Contract after February 7, because the question of waiver had not been set forth in the submission of grievances.

---

[1]. Although a list of only six employees, who had not been laid off on February 7, 1958, was attached to Grievance No. 923, at the hearing before the Arbitrator, the Company admitted that Hynes, Krueger and several others that participated in the picketing were to be included in the submission of this grievance.

It is true that the question of waiver was not spelled out in the grievances placed before the Arbitrator for decision. As a matter of fact, it was not mentioned until after several hearings before him, at which time the Company made timely objection. The Company was overruled but nevertheless it continued to attend the proceedings under protest on the question of waiver.

██ Article 24 of the Contract provides that any discharge of an employee because of his violation of the no-picketing and no-strike provision is "subject to the grievance procedure, including arbitration, if the Union so desires." Surely the Union had the right to submit to arbitration the issue of the propriety or validity of the "discharges" without the consent of the Company. The Arbitrator held that the claimed waiver of the Company's right to discharge the offending employees was an issue properly to be arbitrated. By ruling on the question of waiver, the Arbitrator, who by the terms of the Contract had the "authority to interpret the language of any clause therein," decided that he not only had the authority to decide the question, but also that the question was within the scope of the grievance submitted to him. The answer to the question as to whether a waiver on the part of the Company did in fact occur is a necessary implied condition precedent to the determination of the issue of the validity of the discharge on February 17. Merely because the sub-issues necessary to decide the main question are not specifically set forth in the submission of grievances to the arbitration does not, for that reason, mean that they are beyond his authority to decide. There is only one limitation on the Arbitrator's authority found in Article 17 of the Contract, and that prohibits him from modifying or altering any of the terms of the Contract. His award has not violated that Article. See International Molders and Foundry Workers Union v. Susquehanna Casting

Co., 283 F.2d 80 (C.A. 3, 1960). All the Arbitrator held was that while any employees engaged in a strike or picketing were subject to immediate discharge under the Contract, the Company, by later agreeing to reinstate them, waived its right to discharge them and, by attempting to discharge them, violated both the Contract and the agreement.

██ We are aware that the arbitrability of a violation of a "no-strike" provision, in the absence of terms in the collective bargaining agreement to the contrary, is for the court to decide. See the opinion of Judge Lord in Yale & Towne Manufacturing Company v. Local Lodge No. 1717, etc., 194 F.Supp. 285 (C.A. No. 27,796, E.D.Pa., decided May 18, 1961.) and cases therein cited. When a question is not arbitrable, no matter how clearly it is set forth in a submission, it cannot be ruled upon by an arbitrator over the objection of a party to the collective bargaining agreement. Here the question is not one of arbitrability, for it is clear that on the face of the Contract, the discharge question could be submitted to arbitration,[2] but one concerning the scope of the grievances submitted to the Arbitrator. We do not doubt that if the question of waiver had been raised specifically in the submissions instead of by implication, the Company would have conceded that the Arbitrator had the authority to decide it. By calling it a question of arbitrability does not necessarily make it so.

Accordingly, the Union's motion for summary judgment will be granted, and it may prepare a suggested order for this court.

## ON REARGUMENT

On reargument of this matter, the Company gave as an additional reason to buttress its contention that this court erred in granting the Union's motion for summary judgment, to wit, the existence of a dispute involving questions of fact as to whether the Company, in good faith,

2. See United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 567–568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

offered Hynes and Krueger re-employment at the yard on or about November 11, 1958, and if so, what were the conditions of that offer. Neither party has requested that the matter be adjusted through the grievance procedure under the Contract.

■ We do not believe that we erred in granting the motion. All that was before us on the motion was the question whether the Arbitrator had the authority under the Contract to make the Awards under Grievances Nos. 921 and 923. The application of the Awards under those grievances to the facts for the purpose of ascertaining the damages to each of the men involved was not before us. We do not know how many men there were, the names of all of them, their length of service and rate of pay. As a matter of fact the complete Contract has not been put in the record before us. Under these circumstances, even if we assume that it was our job to do so, it was impossible for this court to have determined the amount of damages each man was entitled to receive under the Awards.

Getting beck to Hynes and Krueger, the Company asserts that it has complied with the Arbitrator's Award as of November 11, 1958, regarding Hynes and Krueger, by offering each of them "any of seven jobs then available within the collective bargaining unit that they wished to take but each of them refused the reemployment offered." The Union claims on behalf of Hynes and Krueger that the offer did not comply fully with the Awards, and, therefore, the two men were justified in refusing to accept the offer. In support of the justification, the Union cited N. L. R. B. v. Poultrymen's Service Corporation, 138 F.2d 204, 210–211 (3 Cir., 1943), and N. L. R. B. v. Electric City Dyeing Co., 178 F.2d 980, 983 (C.A. 3, 1949) wherein the National Labor Relations Board, after having found that the discharges of a number of employees were in violation of the Labor Management Relations Act, ordered the employers, under § 10 of the Act, 29 U.S.C.A. § 160, to reinstate or make them whole by payment to each of them of a sum of money equal to that which they would have normally earned as wages from the date of discharge to the date of the offer of non-discriminatory reinstatement, less their net earnings during such period. The Court of Appeals for this Circuit held, in decreeing the enforcement of the Board's orders, that the rejection by the employees of offers of limited or discriminatory reinstatement by the employers did not have the effect of tolling the running of back pay beyond those dates. On the other hand, the Company argues that the rule announced in those cases is not to be applied here, but the one based on state law, set forth in United Protective Workers of America, Local No. 2 v. Ford Motor Co., 223 F.2d 49, 52, 48 A.L.R.2d 1285 (C.A. 7, 1955), should govern. That rule is: Where a wrongfully discharged employee has not used reasonable diligence to find other suitable work, the damages for the discharge will be reduced by the amount he could have been able to earn if he had used reasonable diligence.[1] Which rule should be applied here? The case of Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972 (1957), gives us some clue. At pages 456–457 of its opinion, at page 918 of 77 S.Ct., the Court states:

"The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. * * * The Labor Management Relations Act expressly furnishes

1. In this connection, see Passino v. Brady Brass Co., 83 N.J.L. 419, 84 A. 615 (1912); Roselle v. La Fera Contracting Co., 18 N.J.Super. 19, 86 A.2d 449 (Ch. Div.1952); King & Graham v. Steiren, 44 Pa. 99 (1862); Seltzer v. City of Reading, 151 Pa.Super. 226, 30 A.2d 177 (1943); Savitz v. Gallaccio, 179 Pa.Super. 589, 118 A.2d 282 (1955).

some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem. * * * Federal interpretation of the federal law will govern, not state law. * * * But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. * * * Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights."

 If in attempting to discharge Hynes and Krueger, or in refusing to reinstate them, the Company had committed an unfair labor practice, as set forth in § 8 of the Labor Management Relations Act, 29 U.S.C.A. § 158, there might be good reason for adopting the rule suggested by the Union. For we think that some distinction in the rule of damages should be made where the discharge or refusal to reinstate involves an unfair labor practice. However, up to this point there is nothing in the record before us, including the findings made by the Arbitrator, that the Company has been guilty of any such practices. Until it has been shown to have done so, we think the rule, in modified form, fashioned after state law and championed by the Company is to be applied in determining the damages to be awarded Hynes and Krueger. Hence, if it is found that the Company offered either Hynes or Krueger, or both of them, re-employment, the net amount each of them would have earned at the job, provided it was not too far out of line with the position from which he was discharged [2]

or one that he is incapable of performing, is to be deducted from the amount he would have been entitled to receive had the job not been offered him.

 Accordingly, we will adhere to our ruling on the motion for summary judgment, and we will order this action to be placed on the trial calendar of this court so that the matter in dispute may be heard if the parties so desire.

The plaintiffs may submit an order.

---

2. See Harger v. Jenkins, 17 Pa.Super. 615 (1901).