## Steinert Petition

*John E. Lavelle*, for Commonwealth.

*Calvin J. Friedberg*, for respondents.

DALTON, J., October 14, 1957.—This matter comes before us on a petition by the Commonwealth to revoke a prior order appointing viewers. The pertinent facts are as follows.

On November 4, 1955, Frank E. Steinert and Clara B. Steinert filed a petition in the court of quarter sessions of this county representing that the Department of Highways had appropriated a portion of their property for highway purposes and had refused to make a fair and adequate settlement. Hence, the appointment of viewers was requested. Upon this ex parte application the court entered an order appointing viewers, as prayed for.

On January 16, 1956, the Commonwealth filed a petition to revoke the order. The Commonwealth's petition alleged that on March 18, 1954, prior to the

appointment of viewers, the Steinerts had executed a settlement and release of damages which had been approved by the court of common pleas of this county on June 1, 1954, pursuant to a petition filed by the Commonwealth in that court to no. 276, July term, 1954. The conditons of the settlement and release were the payment of the sum of $3,400, the receipt of which was acknowledged, and the moving of a frame house and garage and "restoring the same to its normal conditions." The Commonwealth's petition to revoke further alleged that the Commonwealth had paid the Steinerts the stipulated sum of $3,400 and had employed a contractor to move the house and garage to a location selected by the Steinerts and to restore the building to their normal condition.

The Steinerts filed an answer, in which they admitted the execution of the settlement and release, its approval by the court of common pleas, the payment of the sum of $3,400 and the relocation of the house and garage. They denied, however, that the buildings had been restored to their "normal condition". They alleged that the buildings were materially damaged in relocating them, that they were erected on insufficient, improper and insecure foundations in their new locations and that the Commonwealth had failed to construct proper drainage facilities, proper approaches to the building and to landscape the adjacent area.

The property owners contend that the release of damages is not a bar to the appointment of viewers. They contend that the Commonwealth's alleged failure to restore the buildings to what they conceive to be their "normal condition" worked a failure of consideration and that therefore the release may be disregarded.

In support of their position, they cite Schollenberger v. Commonwealth, 29 D. & C. 119, and Grubb v. Commonwealth, 47 D. & C. 651. Those cases are distin-

guishable on their facts. In the Schollenberger case, apparently no money consideration was paid for the release. The owners in that case released their claim for damages resulting from a relocation of a highway along a portion of their property upon conditon that the highway would not be changed along the remainder of their property. The Commonwealth violated the agreement by taking additional land along the excepted portion. Hence, there was a total failure of consideration for the release. In the Grubb case, no money consideration was paid and the release was executed under a mutually mistaken belief that no property of the abutting owner had been taken. Thus, in that case there was both a total lack of consideration and a mutual mistake of fact.

In the present case the owners have received $3,400 of the Commonwealth's money. In addition, their buildings have been moved at the expense of the Commonwealth to new locations selected by them. Their sole complaint is that there was a partial breach of the contract of settlement by reason of the Commonwealth's alleged failure to restore the buildings to their "normal condition."

If the settlement may be rescinded for the alleged partial breach, it must be rescinded in its entirety or not at all: Semple v. The Cleveland & Pittsburg Railroad Co., 172 Pa. 369. A party may not repudiate a contract and retain the benefits derived under it. As a general rule, one who seeks to rescind a contract must first return what he has received under it and place the other party in statu quo: Fowler v. Meadow Brook Water Co., 208 Pa. 473, 476. Failing that, his remedy is an action on the contract, not in disaffirmance of it.

There is no allegation here that the property owners have repaid or offered to repay the $3,400 which they received from the Commonwealth. Neither is there any

allegation that they have reimbursed or offered to reimburse the Commonwealth for the expenses incurred by the Commonwealth in moving the buildings.

The property owners suggest in their brief that the payment of the $3,400 could be taken into account by the board of viewers in fixing the amount of the award. They say nothing about the money expended by the Commonwealth in moving the buildings. If the settlement were set aside, the viewers would be bound to determine the damages de novo according to the usual standard of the difference between the market values of the property immediately before the taking and immediately after the taking. What the property owners overlook is the fact that in applying that standard the viewers, in their sound judgment, would be free to fix the amount of damages at a figure less than the amount which the Commonwealth has already paid and expended under the terms of the settlement.

In that case, the property owners would become debtors to the Commonwealth for the excess and the Commonwealth might be put to additional litigation in a different forum to collect it. We have very grave doubts whether the settlement may be rescinded by the adoption of procedure which would lead to such potential results.

On the other hand, if the property owners have failed to comply with the conditions necessary to a rescission, their grievance must necessarily be confined to a claim for damages for the alleged breach of the contract. But that is not a matter which a board of viewers has power to adjudicate. The Commonwealth may be sued only "in such manner, in such courts and in such cases as the Legislature may by law direct": Pennsylvania Constitution, article 1, sec. 11. It may well be that the owners' proper remedy was not to attempt a rescission of the settlement without first

placing the Commonwealth in statu quo, but to present a claim upon the contract to the State Board of Arbitration of Claims, which has jurisdiction to hear and determine claims against the Commonwealth arising out of contracts entered into by the Commonwealth. See the Act of May 20, 1937, P. L. 728, 72 PS §4651-1 et seq. However, for reasons now about to be stated, we need not decide that question.

In any event, there are at least two insuperable obstacles to the proceedings which the property owners instituted here in the court of quarter sessions.

In the first place, the settlement has been approved and confirmed by a decree of the court of common pleas. The court of quarter sessions has no power to disregard, vacate or open a decree of the court of common pleas.

Secondly, and of controlling importance, is the fact that the court of quarter sessions has no jurisdiction whatever over the subject matter of this proceeding. The record made in the court of common pleas at no. 276, July term, 1954, reveals that the property was condemned pursuant to an order of the Public Utility Commission and that the commission, of its own motion, submitted the determination of the amount of damages to the court of common pleas of this county pursuant to the provisions of the Public Utility Law of May 28, 1937, P. L. 1053, sec. 411, 66 PS §1181. That statute provides that the compensation for damages incurred by the taking shall be ascertained by the commission, but further authorizes the commission, of it own motion or on the application of an interested party, to submit the determination of the amount of damages to the court of common pleas of the county where the land is located, for which purpose the said court of common pleas is authorized to appoint viewers.

*It is clear that the court of quarter sessions has no jurisdiction whatever to appoint viewers in this matter. Therefore, the order of appointment heretofore entered by it must be revoked.*

And now, October 14, 1957, it appearing that the court of quarter sessions is without jurisdiction of the subject matter of this proceeding, the rule to show cause why the appointment of viewers should not be revoked is made absolute, and the order of appointment heretofore entered on November 1, 1955, is hereby revoked and vacated.

And now, October 14, 1957, an exception is allowed respondents and bill sealed.