## City of Wilkes-Barre v. Wilkes-Barre Township

272

*Peter Paul Olszewski*, for plaintiff

*Thomas C. Moore*, for defendant.

PINOLA, J., November 3, 1960.—The City of Wilkes-Barre filed a petition asking that the court require the Township of Wilkes-Barre to share in the cost of maintaining a street which is on the boundary line between the two municipalities.

The city asks that an order be made with reference to the maintenance of South Empire Street from East Northampton Street to Stanton Street. Although the street is 50 feet wide, only 22 feet are paved. Of these, 15 feet are in the city and seven are in the township. The boundary line runs through the center of the street.

The township insists that it is not financially able to pay for the repairs and that consideration should be given to the fact that there is only one building on the township side of the street, while there are numerous dwellings and other buildings on the city side of the street.

From the testimony, we make the following

### Findings of Fact

1. South Empire Street from East Northampton Street to Stanton Street is 50 feet wide and the center line thereof is the boundary line between the City of Wilkes-Barre and Wilkes-Barre Township.

2. Only 22 feet of South Empire Street are paved, 15 feet thereof being in the city and seven feet in the township.

3. Originally, a brick pave was installed over which an asphalt surface was placed at a later date.

4. The paved portion of South Empire Street from East Northampton Street toward Stanton Street for a distance of 2,786 feet is in disrepair, and the section between East Northampton Street and Moyallen Street requires resurfacing. There are other parts of the pave which can be repaired by patching with blacktop.

5. The city officials have endeavored to have the officials of Wilkes-Barre Township enter into an agreement providing for the maintenance of South Empire Street and the division of the cost thereof, but the township officials have failed and refused to enter into any such contract.

6. In winter it is necessary to properly maintain South Empire Street in a safe condition for travel, that salt, ashes and/or other abrasives be applied to the street.

## Discussion

Under article XXIX, sec. 2985, of The Third Class City Code of June 23, 1931, P. L. 932, as amended, 53 PS §37985, "Whenever any street is on the boundary line between any city and a township, such street shall be maintained jointly by the city and the township. For the purpose of maintaining any such street, the authorities of any city are hereby directed to enter into agreements with the authorities of any township providing the manner in which the same shall be maintained, and providing for the division of the cost of maintenance between the city and township. If any such city or township shall fail or refuse to enter into any such contract, any taxpayer thereof or the corporate authorities of the city or township may present a petition to the court of quarter sessions of the county, setting forth the facts. The court, after hearing, of which such notice shall be given to all parties inter-

ested as the court may direct, shall make an order directing the manner of such maintenance and the division of the cost of maintenance between the city and the township."

We find practically the same provision in article XXI, sec. 2105, of The First Class Township Code of June 24, 1931, P. L. 1206, as amended, 53 PS §57105.

To maintain means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse or cessation from that state or condition. In a wide variety of situations the word "maintain" has been taken to be synonymous with "repair". This is the usual meaning, the dictionary meaning, and the meaning which must control in the absence of a real expression of a contrary intention: Restatement of Contracts, §235a: Morris v. American Liability & Surety Company, 322 Pa. 91, 95.

In City of Bucyrus v. Pennsylvania R. R. Co., 127 Ohio 301, 188 N. E. 355, the court held that a statute requiring a municipality to "maintain" a public way which passes under a railroad required the city to make improvements such as resurfacing.

The city has made many efforts to have the authorities of Wilkes-Barre Township enter into an agreement, but the latter have failed and refused to do so. Their contention that they should not bear seven twenty-seconds of the cost of maintenance of the street because there are more buildings on the city side of the street than on the township side is without merit. Nor can we consider the fact that they are not as well able to bear the cost of the maintenance as the city. The budget provides $2,500 for street work, and the township receives $8,900 from the State which must be expended for the care and maintenance of streets in the township.

At the hearing it developed that the probable cost of the repairs and resurfacing would be $12,000. The city

is under contract with the Addy Asphalt Company and must have its paving done by that concern. The contract was let, after solicitation of bids, so we must assume that it is fair insofar as it may apply to work to be done on South Empire Street.

From the facts, we reach the following

## Conclusions of Law

1. Since the authorities of Wilkes-Barre Township have failed and refused to enter into an agreement with the City of Wilkes-Barre for the maintenance of South Empire Street, this court has jurisdiction of the matter.

2. The Township of Wilkes-Barre is responsible for the maintenance of seven twenty-seconds of the paved portion of South Empire Street.

3. The City of Wilkes-Barre is responsible for the payment of 15 twenty-seconds of the maintenance of the paved portion of South Empire Street.

On the basis of the findings and conclusions, we enter the following *Order*

Now, November 3, 1960, at 11 a.m., it is ordered:

1. That the City of Wilkes-Barre and Wilkes-Barre Township jointly maintain South Empire Street and place it in good condition;

2. That the spot-patching and resurfacing required be done in the first instance by the City of Wilkes-Barre under its existing contract for the maintenance of streets;

3. That the City of Wilkes-Barre clean the snow from South Empire Street in winter and apply to said street salt or ashes, or other abrasives, to keep the same in a safe passable condition; and,

4. That Wilkes-Barre Township pay to the City of Wilkes-Barre, seven twenty-seconds of the cost of repairs to South Empire Street and the cost of cleaning and maintaining the street during the winter months,

said amounts to be paid upon presentation of bills therefor by the City of Wilkes-Barre.

*Sur Exceptions*

PINOLA, J., May 12, 1961.—Being unable to get Wilkes-Barre Township to agree on a division of the cost of maintenance of the paved portion of Empire Street, which is on the boundary line between the city and the township, the City of Wilkes-Barre brought an action against the township under the provisions of section 2985 of the Third Class City Code of June 23, 1931, P. L. 932, as amended, 53 PS §37985, which authorizes the court, after hearing, to "make an order directing the manner of such maintenance and the division of the cost of maintenance between the city and the township."

Practically the same provision is to be found in The First Class Township Code of June 24, 1931, P. L. 1206, as amended, sec. 2105, art. XXI, 53 PS §57105.

The boundary is along the center line of Empire Street. The street is 50 feet in width but only 22 feet are paved. Of these, 15 are in the city and seven in the township.

The writer heard the testimony and ordered that the city and township jointly maintain the street in good condition, that spot patching and resurfacing be done by the city under its existing contract with Addy Asphalt Company, that the city clean the snow in winter and apply salt and/or ashes to keep the same in passable condition, and that the township pay to the city seven-twenty-seconds of the cost of repairs and of the cost of cleaning and maintaining the street during winter months.

The township filed exceptions claiming:

1. The court exceeded its authority in directing the resurfacing and improvement of Empire Street and that the work be done by the contractor for the city;

2. The improvement and resurfacing of the street is a matter entirely for the discretion of the elected municipal authorities; and,

3. That in making the apportionment of the cost, the court erred in failing to consider ability to pay and other matters including the utility of Empire Street to the township.

Counsel for the township stated at argument that he was not pressing exception 1. And as to exception 2, he cited no authority in support of his contention.

His argument was directed entirely to exception 3, to the failure of the court to consider other matters including the utility of Empire Street to the township.

He contends that the portion of the city along Empire Street is built up with many structures, while the township on the other side of the street has but one or two improved properties, one of which is owned by a public utility and, therefore, tax free. He contends that vehicles using the street must necessarily be serving the properties situate in the city, rather than that situate in the township. In this argument he forgets that the streets are for the use not only of the adjoining property owners and the residents of both municipalities, but for the general public as well.

He argues also that it is unfair to require the township to expend the necessary funds to maintain Empire Street because the sum required is out of proportion to the sum necessary for the maintenance of all other streets in the township, many of which are not even paved.

Also, that the township being in financial distress, all it could afford would be to share the cost of patching holes on Empire Street and not the resurfacing work.

He insists that before spending the taxpayers' money on Empire Street, the condition of the other streets in the municipality should be considered along with

the utility of Empire Street, the revenue it brings in and the number of taxpayers residing upon it.

Although, because of our conclusion, we need not be concerned with it, we do point out that in addition to the revenue provided to the budget for township roads, to wit, about $2,500, the township receives nearly $9,000 from the State Tax Fuel Fund.

"Within constitutional limits, the legislature has absolute power over the political subdivisions of the state, and may enlarge their areas, or change their functions, or modify their internal arrangements, or destroy their existence: Mill Creek Township Annexation, 74 Pa. Superior Ct. 275": In re Annexation of Baldwin Township, 103 Pa. Superior Ct. 106, 110.

The obvious answer to counsel's arguments is that if the legislature intended the court to take into consideration the elements to which he refers, it would have said so.

The Third Class City Code and The First Class Township Code were passed at the same session of the legislature in 1931, and both codes have practically the same provisions with reference to the improvement and maintenance of streets which are on or near the boundary line between a city, a township and a borough.

The Third Class City Code of June 23, 1931, P. L. 932, sec. 2985, deals with the maintenance of a highway which is on the boundary line between any city and township and requires that it be "maintained jointly by the city and the township." The next section, 2986, deals with highways the center line of which is the boundary between municipalities in the same county. In such case, the city may enter into a contract with the commissioners of the county and the commissioners or road supervisors of a township providing for the grading and paving of the roadway and apportioning and directing that the costs be borne

one-half by the city and one-half by the county and township in equal portions. The alterations or improvements are to be made by the authorities of the city. And the cost of any repairs thereafter shall be borne one-half by the city and one-half by the township, or by the county and township in equal portions or such other portions as may be agreed upon by the county and township.

Section 2987 deals with highways the center line of which is the boundary between municipalities in different counties. Section 2988 deals with highways more than a half of whose width is in a city. And section 2989 deals with the assessment on property outside the limits of the city where the highway is entirely within the city.

It is evident that the legislature sought to provide for all possible situations. In section 2985, with which we are here concerned, it deals generally with the maintenance of streets or highways forming boundaries. It leaves it to the court to determine the location of the boundary line and to make a proper apportionment of the cost of maintenance. This section would apply if the boundary line be along the center of the highway, or along either side, or between the center and one of the sides.

Where the legislature confers on the court some measure of jurisdiction with respect to a matter which is administrative in nature, the courts must act in the manner and within the limits prescribed and their decrees will have the effect which the legislature has designated that they should have: Russell Box Co. v. Commissioner, 325 Mass. 536, 91 N. E. 2d 750; 73 C. J. S. 340, §37.

The court is bound by the rules which govern administrative agencies. It has only such jurisdiction or powers as have been granted to it by law either expressly or by implication, and it may not assume au-

thority or power which has not been vested in it by statute: Insurance Commissioner v. Yelen, 88 D. & C. 337. Any reasonable doubt as to the existence of any particular power must be resolved against it: United States v. Minker, 350 U. S. 179, 76 S. Ct. 281, 100 L. Ed. 185. A doubtful power does not exist: Green v. Milk Control Commission, 340 Pa. 1, 16 A. 2d 9.

Here the legislature requires the court to determine two things only: (1) The location of the boundary line, and (2) to make a proper division of the maintenance cost. Situations could arise where a serious dispute would exist as to both. This case, although not involved, presents an unusual situation. While the boundary line runs along the center of the street, the city must pay for the maintenance of 15 of the 22 feet paved.

We find no merit to any of the exceptions, and, therefore, they are dismissed, and we enter the following

*Final Order*

Now, May 1, 1961, at 12 M., it is ordered:

1. That the City of Wilkes-Barre and Wilkes-Barre Township jointly maintain South Empire Street and place it in good condition;

2. That the spot-patching and resurfacing required be done in the first instance by the City of Wilkes-Barre under its existing contract for the maintenance of streets;

3. That the City of Wilkes-Barre clean the snow from South Empire Street in winter and apply to said street salt or ashes, or other abrasives, to keep the same in a safe passable condition; and,

4. That Wilkes-Barre Township pay to the City of Wilkes-Barre, seven-twenty-seconds of the cost of repairs to South Empire Street and of the cost of cleaning and maintaining the street during the winter months, said amounts to be paid upon presentation of bills therefor by the City of Wilkes-Barre.