606 A.2d 1243

Appeal of H. Theresa EDGE from a Decision of the Chester Upland School District of the Board of Directors of Chester Upland School District Terminating H. Theresa Edge's Employment.

Appeal of CHESTER UPLAND SCHOOL DISTRICT.

Appeal of Frances McCRAY from a Decision of the Chester Upland School District of the Board of Directors of Chester Upland School District Terminating Frances McCray's Employment.

Appeal of CHESTER UPLAND SCHOOL DISTRICT.

Appeal of Claire JACKSON from a Decision of the Chester Upland School District of the Board of Directors of Chester Upland School District Terminating Claire Jackson's Employment.

Appeal of CHESTER UPLAND SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1991.

Decided April 3, 1992.

Reargument Denied May 14, 1992.

David C. Corujo, for appellant.

Laura Aldir–Hernandez, for appellee H. Theresa Edge.

Anthony Carrozza, III, for appellees Frances McCray and Claire Jackson.

Before PALLADINO and SMITH, JJ., and LORD, Senior Judge.

SMITH, Judge.

 Chester Upland School District appeals from a Court of Common Pleas of Delaware County order awarding H. Theresa Edge, Frances McCray and Claire Jackson (collectively Employees) back pay damages. The issues before this Court are whether the trial court's order directing the School District to reinstate Employees and awarding back pay alleviated the Employees' respective duties to make reasonable efforts to mitigate their damages during the period of time the School District sought appellate review of the order; and, whether the trial court erred by not reducing Employees' back pay awards by the amount of wages which they would have earned had they obtained other full-time work.[1]

In September of 1986, the School District terminated Employees' employment for violation of the School District's residency requirement. On June 4, 1987, the trial court reversed the School District's determination and ordered reinstatement of Employees with back pay and benefits from October 27, 1986. On September 4, 1987, this

1. This Court's scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or violated constitutional rights. *Jackson v. Southeastern Pennsylvania Transportation Auth.*, 129 Pa.Commonwealth Ct. 596, 566 A.2d 638 (1989), *appeal denied*, 527 Pa. 656, 593 A.2d 426 (1990).

Court vacated the automatic supersedeas provided by Pa. R.A.P. 1736(b) as it pertained to the reinstatement portion of the trial court's order. On May 24, 1988, the Pennsylvania Supreme Court reversed this Court and ordered that the supersedeas remain in effect. Subsequently, this Court upheld the trial court on the merits, the Supreme Court denied the School District's petition for allowance of appeal, and the matter was returned to the trial court to determine the amount of back pay and benefits due Employees. *McNelly Appeal*, 122 Pa.Commonwealth Ct. 601, 553 A.2d 472 (1989), *appeal denied*, 525 Pa. 648, 649–50, 581 A.2d 574, 575 (1990). On April 16, 1990, the School District reinstated Employees.

The trial court held a hearing on October 23, 1990 at which Employees testified. Edge testified that she was terminated from her position as a library aide in September of 1986; she did not seek any employment between September, 1986 and June, 1987; in November or December of 1987 she unsuccessfully applied for a position as a teacher's aide with the Chichester School District; in September, 1988 she again unsuccessfully applied to the Chichester School District for a position as a kindergarten aide; and, that during this time she incurred medical expenses which would have been covered by the School District's benefits plan had she been working with the School District. N.T., pp. 116–19, 121–22, 125, 128–29.

McCray testified that she was also terminated from her position as a library aide in September of 1986; she worked as a teacher's aide at the Wallingford Swarthmore School District from September, 1986 until June, 1987 and from September, 1987 until June, 1988; she did not work from September, 1988 through June, 1989 although she tried to obtain work at different libraries in the district; she worked at Kindercare on a full-time basis from September, 1989 through December, 1989 and on a part-time basis from January, 1990 until April, 1990; and, that she did not incur any medical expenses during that time that were not covered by her husband's insurance. N.T., pp. 87–93, 99.

Jackson testified that she was terminated from her position as a clerk typist with the business office in September of 1986; she contacted Scott Paper, Sun Oil and Boeing but they were not taking applications; she responded to leads through the unemployment office but was not hired for the positions; her only employment from September, 1986 through April, 1990 was occasionally selling souvenirs at Eagles games on Sunday or Monday nights in "Vets" stadium; she occasionally helped her husband in his bar business for which she was not compensated; and, that her husband paid additional premiums to cover her on his insurance. N.T., pp. 102–6, 108.

The School District presented to the trial court the testimony and report of an economist, Brian P. Sullivan, Ph.D. Dr. Sullivan stated that he reviewed a statement of wages that would have been paid by the School District had Employees not been terminated; documents reflecting the wages Employees earned, the type of alternate employment Employees obtained, where Employees applied for jobs, and what Employees' job titles were with the School District; Area Wage Surveys for the Philadelphia and New Jersey area for the years 1984, 1986, 1987, 1988 and 1989 which indicate different types of jobs existing in the area and an estimate of the number of overall positions in those jobs; and, the "want ads" in several issues of the Philadelphia Inquirer in 1988 and 1989 to see if the types of jobs listed in the survey were advertised positions. Based upon this information, Dr. Sullivan fit each one of the Employees into a job description consistent with a type of job listed in the wage surveys, calculated the earnings these individuals could have earned during the time they were terminated, subtracted their "earnings in mitigation", and estimated the economic loss suffered by each Employee while unemployed. Dr. Sullivan admitted that the wage surveys did not distinguish between positions which were vacant or filled, yet opined that there were many jobs available for Employees. N.T., pp. 138–40, 142, 144–47, 153, 156–60.

The trial court found credible Employees' testimony concerning efforts to mitigate their damages and further found that the School District did not provide testimony of sufficient weight on the issue. The trial court granted the School District a credit for the amount of unemployment compensation Employees received and the sum McCray actually earned and ordered that the School District pay full back pay to Edge in the amount of $39,300.06; back pay and interest to McCray in the amount of $39,949.73; and, back pay, interest and reimbursement of medical expenses to Jackson in the amount of $91,997.94.

Employees argue that in accordance with two breach of warranty cases, *Ecksel v. Orleans Construction Co.*, 360 Pa.Superior Ct. 119, 519 A.2d 1021 (1987) and *Loyal Christian Benefit Ass'n v. Bender*, 342 Pa.Superior Ct. 614, 493 A.2d 760 (1985), they did not have a duty to mitigate their damages after the trial court's initial order because the School District had an equal or better opportunity to mitigate the losses. While this Court agrees with Employees that a case may arise within the employment context wherein an employer may be in a better or equal position to mitigate damages thereby alleviating an employee's duty to do likewise, this Court does not agree that herein the School District had a greater or equal opportunity to mitigate Employees' damages.

Although the School District could have mitigated the damages by rehiring Employees in accordance with the trial court's order, the School District's refusal to do so was not unreasonable since the School District was within its rights to timely seek appellate review of the orders entered by the trial court and this Court and also since it promptly reinstated Employees after the Supreme Court denied allocatur in March, 1990. Further, the School District enjoyed a supersedeas of the trial court's initial order and, therefore, was not in willful contempt of that order. In addition, Employees' status of "terminated" did not change during the September, 1986 through March, 1990 period while the litigation was pending despite the trial court's initial order;

and, while it may have been more difficult to obtain employment after the trial court's initial order because potential employers inquired about Employees' intentions regarding a possible return to their positions with the School District, the record reflects that there were opportunities for Employees to make efforts to gain employment, that the trial court found credible Employees testimony regarding those efforts, and that, in fact, McCray did obtain other employment.[2]

■ The School District contends that the trial court erred by failing to reduce Employees' back pay awards by the amount of wages which Employees would have earned had they obtained full-time positions, and since Employees did not use reasonable diligence in finding other suitable employment, the School District is therefore entitled to credit for the amount Employees could have earned.

■ It is a well-established rule of law that one who suffers a loss due to breach of a contract has a duty to make reasonable efforts to mitigate that loss. *State Public School Building Auth. v. W.M. Anderson Co.*, 49 Pa.Commonwealth Ct. 420, 410 A.2d 1329 (1980). In a breach of contract of employment case, the measure of damages is the wages which were to be paid less any amount actually earned or which might have been earned through the exercise of reasonable diligence in seeking other similar employment. *Coble v. Metal Township School Dist.*, 178 Pa.Superior Ct. 301, 116 A.2d 113 (1955). Further, it is the breach-

---

**2.** In *Ford Motor Co. v. Equal Employment Opportunity Comm'n*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), an employment discrimination case filed pursuant to Title VII of the Civil Rights Act of 1964, Justice O'Connor noted:

Delays in litigation unfortunately are now commonplace, forcing the victims ... to suffer years of underemployment or unemployment before they can obtain a court order awarding them the jobs unlawfully denied them. In a better world, perhaps, lawsuits ... would speed to judgment so quickly that the effects of legal rules on the behavior of the parties during the pendency of litigation would not be as important a consideration. We do not now live in such a world, however....

*Id.* at 229, 102 S.Ct. at 3064.

ing party who has the burden of showing that the losses could have been avoided. *Savitz v. Gallaccio,* 179 Pa.Superior Ct. 589, 118 A.2d 282 (1955).

Here, the School District had the burden of proving that Employees failed to make reasonable efforts to mitigate damages. The School District could have established that burden by proving that other substantially equivalent positions were available to Employees and that they failed to use reasonable diligence in attempting to secure those positions. *See Anastasio v. Schering Corp.,* 838 F.2d 701 (3rd Cir.1988). Dr. Sullivan's testimony merely established that generally, in the Philadelphia and New Jersey areas, jobs existed which he considered equivalent to the positions Employees held with the School District. However, Dr. Sullivan did not testify nor did the School District otherwise establish that actual vacant positions were available to Employees and that they failed to exercise reasonable diligence to obtain those positions. Accordingly, since the School District did not prove that Employees failed to make reasonable efforts to mitigate their respective losses, the order of the trial court is affirmed.

## ORDER

AND NOW, this 3rd day of April, 1992, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is affirmed.