**YARDLEY BOROUGH**

v.

**LOWER MAKEFIELD TOWNSHIP, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 12, 1999.

Decided June 3, 1999.

Jeffrey P. Garton, Langhorne, for appellant.

Edwin N. Popkin, Langhorne, for appellee.

Before DOYLE, J., SMITH, J., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Before this Court is an appeal by Lower Makefield Township (Township) from that portion of an order of the Court of Common Pleas of Bucks County allocating the reconstruction costs of a boundary road and bridge separating Lower Makefield Township from the Borough of Yardley (Borough).

Part of the boundary between the Township and the Borough is located along the centerline of Oxford Road which traverses a small stream known as Silver Creek so that 50% of the road and 50% of the Oxford Road Bridge is in each municipality. On June 12, 1996, the Township and Borough experienced heavy rainstorms which resulted in heavy flooding and extensive damage to the portion of Oxford Road which forms the boundary between the two municipalities and part of the culvert which contained Silver Creek beneath the bridge and the roadway was washed away. The roadway has remained impassible and the bridge closed to vehicular and pedestrian traffic since the storm.

Representatives of the Township and the Borough met on numerous occasions to assess the damage to the roadway and bridge and to develop a plan to reconstruct the damaged infrastructure and allocate the costs. These representatives were unable to reach a mutually acceptable agreement, however, and consequently, pursuant to Section 2332 of the Second Class Township Code (Code),[1] the Borough filed a petition with Common Pleas to determine the rights and responsibilities of the Township and the Borough concerning the bridge and road repair. Common Pleas conducted a hearing on July 8, 1998.

The parties presented two separate issues to Common Pleas. The first issue, which is not before this Court, dealt with the technical nature of the road and bridge repair itself. The second issue concerned the apportionment of the costs of the repairs. Common Pleas determined that the Township should bear 80% of the costs of reconstruction, and the Borough would be responsible for the remaining 20% of the costs. It is from this determination that the Township appeals.

On appeal,[2] the Township argues that Common Pleas committed an abuse of discretion and an error of law when it failed to use "geographic" apportionment as the sole guideline in determining the allocation of the costs associated with the reconstruction of Oxford Road.

Before this Court the Township makes the following argument:

[T]he boundary line between the Borough and the Township is located in the center of the road and in the center of the bridge. Both parties acknowledge this fact.... As such, the site of the improvement is to be located 50% within the Borough of Yardley and 50% within the Township of Lower Makefield. **Consequently, it is the Township's position, from a geographic perspective, that the costs should be borne equally by the Borough and the Township.**

(Township's Brief at 8.) (Emphasis added.) The Township's appeal presents this Court with an issue of first impression, the inter-

**1.** Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 67332, *added by*, Act of November 9, 1995, P.L. 350.

**2.** This Court's review is limited to determining whether the trial court abused its discretion, violated constitutional rights, or committed an error of law. *Appeal of Edge*, 147 Pa.Cmwlth. 27, 606 A.2d 1243 (1992).

pretation of Section 2332 of the Code, which provides as follows:

> (a) When any road or bridge, other than a State or county road or bridge, is created or located along, on or over boundaries between townships and any other municipal corporation, the creation, location, construction, maintenance and repair of the road or bridge shall be the joint responsibility of the township and the municipal corporation with which the common boundary is shared.

> (b) The board of supervisors may make agreements with any adjacent municipal corporation to provide for the apportionment of the cost of construction, repair and maintenance of boundary roads or bridges.

> **(c) If an amicable agreement on the proportionate share of costs of construction, repair and maintenance of boundary roads or bridges cannot be executed, the board of supervisors or the governing body of the other municipal corporation involved may petition the court of common pleas of the county or counties for a determination of the rights and responsibilities of the respective municipal corporations involved.**

53 P.S. § 67332 (emphasis added). Although we have been unable to unearth any appellate cases adjudicated under this statute, the Township directs our attention to the case of *City of Wilkes–Barre v. Wilkes–Barre Township*, 24 Pa. D. & C.2d 271 (1961), to support its argument that reconstruction costs should be evenly divided between the Township and the Borough.

In *Wilkes–Barre*, there was a dispute between the City of Wilkes–Barre and the Township of Wilkes–Barre over the maintenance of a boundary road, where fifteen feet of the twenty-two foot width of the road were in the city, and the remaining seven feet were in the township. The municipalities there, as here, were unable to agree on the apportionment of the re-

pair costs for the boundary road and petitioned Common Pleas to adjudicate the matter under a section of the Third Class City Code that is very similar to Section 2332 of the Second Class Township Code. There the Court of Common Pleas of Luzerne County determined that the city would be responsible for fifteen twenty-seconds of the costs and the township would be responsible for the remaining portion, or seven twenty-seconds of the cost, based upon an apparent "geographical" apportionment. The Township here contends that the Court of Common Pleas of Bucks County should have done likewise and simply divided the costs equally, because 50% of the road and bridge is in each municipality.

■ The Common Pleas Court, however, determined that the Township was responsible for 80% of the reconstruction costs and the Borough was required to pay the remaining 20% because of a variety of factors, including the relative size of the two municipalities, their respective populations, the number of housing units in each municipality and other relevant considerations. Quoting with approval from the able opinion of President Judge Isaac S. Garb:

> In land area, Yardley is 0.916 square miles and Lower Makefield Township 17.842 square miles. The ratio to the combined area of 18.758 square miles is 4.88% in Yardley and 95.12% in Lower Makefield. In 1990, the population of Lower Makefield Township was 25,083 and that of Yardley Borough 2,288. The percentage relationship of the combined population is 8.36% in Yardley and 91.64% in Lower Makefield. The 1997 population for Yardley Borough is 2,375 and that for Lower Makefield 31,832. The percentage change from 1980 in Yardley Borough was a loss of 6.2% and in Lower Makefield a gain of 83.5%. The population projections from the Bucks County Planning Commission for the year 2000, in the middle range, is 2,290 for Yardley Borough and 28,820 for Lower Makefield. For the year 2010, 2,310 for Yardley Borough and 32,900

for Lower Makefield. For the projected year 2020, 2,300 for Yardley Borough and 35,730 for Lower Makefield.

In terms of housing units, in 1997, Yardley Borough had 1,135, Lower Makefield had 11,331 . . . .

The income statistics from the 1990 Federal Census indicate that the Yardley per capita income was $21,969 and the median family income was $45,187. For Lower Makefield, the per capita income was $28,853 and the median family income $75,732.

The total value of owner occupied housing units, from the 1990 U.S. Bureau of Census, showed Yardley Borough at $84,302,500 and Lower Makefield Township at $1,604,252,500. The total assessed valuation as of May, 1998, was for Yardley Borough $6,802,740 and for Lower Makefield Township $115,-190,935.

Lastly, the comparative road miles for Yardley Borough is 10.8 and that for Lower Makefield Township approximately 140 . . . .

[An additional] consideration is the fact that to a great extent this culvert was rendered inadequate because of the great increase in development in the Township causing a significant increase in water run-off over the last 20 years.

(Opinion of the trial court at 4–6.)

■ We believe that the reasoning of Judge Garb was sound, and that the conclusion reached to predicate the division of the costs of the repair on multiple factors which were relevant to the use of the road and bridge by the residents of the Township and the Borough was well within his discretion; further, we specifically decline to adopt the blind application of the "geographic" apportionment advanced by the Township.

Section 2332 of the Code invests the Court of Common Pleas with the discretion to make "a determination of the rights and responsibilities of the respective municipal corporations involved," 53 P.S. § 67332(c), in a disagreement over repair of a boundary road. Here, Common Pleas conducted a hearing where extensive factual presentations were offered, and the Court made a determination based upon a statistical analysis of those facts. Based upon those statistics the Court concluded that the Township had a responsibility for 80% of the reconstruction costs. After our own review of the record, we are unable to agree with the Township that it should be responsible for only 50% of the reconstruction costs when the overwhelming majority of the population of the combined area lives in the Township and, we must assume, would use Oxford Road and the bridge proportionate to that population, and likewise has the greater resources to contribute towards the repair and reconstruction costs.

Order affirmed.

### ORDER

**NOW**, June 3, 1999, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.